UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
VALLEY FORD TRUCK, INC. :
: CASE NO. 1:10-CV-02170
Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 30, 32, 37]
THE PHOENIX INSURANCE CO. :
:
Defendant. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this insurance contract case, Plaintiff Valley Ford Truck Inc. ("Valley Ford") and Defendant Phoenix Insurance Company ("Phoenix") file cross-motions for summary judgment under Federal Rule of Civil Procedure 56. [Doc. 30; Doc. 32.] Both motions are opposed. [Doc. 35; Doc. 37.]

For the following reasons, the Court **GRANTS** the Defendant's motion for judgment and **DENIES** the Plaintiff's motion judgment.

**I. Background**

This lawsuit arises from an insurance contract that Defendant Phoenix issued to Plaintiff Valley Ford on March 18, 2008 and requires the Court to determine whether Phoenix contractually agreed to defend and indemnify Valley Ford with regard to claims that Valley Ford sold trucks that were said to have dump truck frames when many, if not all, of the trucks that Valley Ford sold to this

-1-

Case No. 1:10-CV-02170
Gwin, J.

customer did not. [Doc. 29-1 at 1.] Plaintiff Valley Ford is a Ford truck dealership incorporated in Delaware with its principal place of business in Cleveland, Ohio; Defendant Phoenix is an insurance company with its principal place of business in Hartford, Connecticut. [Doc. 16 at 1; Doc. 22 at 1.] The Court has proper diversity jurisdiction over this action under 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

The insurance policy issued by Defendant Phoenix to Plaintiff Valley Ford covered the period from March 1, 2008 to March 1, 2009. [Doc. 29-1 at 1.] The insurance policy includes Garages Operations Liability Coverage. [*Id.* at 22.] The Garage Operations portion of the policy provides coverage for "all sums an 'insured' legally must pay as damages because of . . . 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations' other than the ownership, maintenance or use of covered 'autos.'" [*Id.* at 22.] The policy defines "accident" as a "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage'" and "property damage" as "damage to or loss of use of tangible property." [*Id.* at 36-37.] The policy also includes a number of exclusions, including: (1) "Expected or Intended Injury," which is defined as "'Bodily Injury' or 'Property Damage' expected or intended from the standpoint of the 'insured' . . ."; (2) "Contractual," which is defined as "Liability assumed under any contract or agreement . . . [other than] . . . "an 'insured contract'"; and (3) "Loss Of Use," which is defined as "Loss of use of other property not physically damages if caused by [ ] a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." [*Id.* at 24-27.] The contract contains an endorsement that the "Defective Products" exclusion does not apply. That Defective Products provision, excluded coverage for "'Property Damage' to any of your 'products,' if caused by a defect existing in your 'products' or any part of

-2-

Case No. 1:10-CV-02170
Gwin, J.

your 'products,' at the time it was transferred to another." [*Id.* at 27.] Additionally, the policy also included an "Auto Dealers – Products Defense Coverage" endorsement, covering defense costs incurred defending a lawsuit arising from the "sale, lease, rental, service or repair of your 'garage operations,'" up to a $25,000 limit with a $1,000 deductible. [*Id.* at 25.]

On December 8, 2008, Shaker Auto Leases, Inc. ("Shaker") filed a complaint against Valley Ford and several other parties in the Cuyahoga County Court of Common Pleas. [Doc. 29 at 1.] This underlying lawsuit is still pending. The complaint alleges that Valley Ford entered into purchase agreements with Shaker; in these agreements Valley Ford agreed to sell vehicles to Shaker for the purpose of Shaker leasing them to Mark's Akron Medina Truck Sales, Inc. ("Mark's"). [Doc. 31 at 9.][1/] According to Shaker, these trucks were supposed to have dump truck frames. [*Id.* at 9.] However, Shaker alleges that on December 3, 2008, it discovered that many, if not all, of the trucks sold by Valley Ford did not actually have dump truck bodies. [*Id.* at 9.] In the complaint, Shaker asserted claims for rescission and breach of contract. [*Id.* at 9.] On June 24, 2010, Shaker filed an amended complaint ("amended Shaker complaint"), in which Shaker maintained the rescission and breach of contract claims, and also asserted claims for fraud, unjust enrichment, and negligent misrepresentation against Valley Ford and the other defendants. [*Id.* at 10-12.] Shaker alleges that Valley Ford either intentionally or negligently told Shaker that the trucks had dump bodies, when in fact the trucks did not. [*Id.* at 12.]

Valley Ford submitted the original complaint to Defendant Phoenix for indemnity coverage and defense cost coverage. [Doc. 29-4.] On May 8, 2009, Phoenix declined coverage over any

---

[1/] Valley Ford states that during these transactions that Mark's would transfer title to Valley, who in turn transferred to Shaker, who then leased the trucks back to Mark's. [Doc. 32 at 5.] Valley Ford further says that since Mark's was the source of all of the trucks at issue, that Valley Ford never had physical possession of the trucks. [*Id.*]

-3-

Case No. 1:10-CV-02170
Gwin, J.

liability arising from this suit beyond the $25,000 of coverage included in the "Auto Dealers-Product Defense Coverage" endorsement. [*Id.*] Phoenix declined coverage on several grounds, saying (1) that the damage alleged by Shaker in the underlying lawsuit was not "property damage" and that (2) the "Contractual Liability," "Defective Products," "Loss of Use," and "Product Recall" exclusions applied. [*Id.*] After the filing of the amended Shaker complaint in the underlying litigation, Valley Ford again tendered defense to Phoenix. [Doc. 29 at 2.] On September 22, 2010, Defendant Phoenix informed Valley that it was denying coverage beyond the $25,000 "Auto Dealers-Product Defense Coverage" endorsement on the grounds that (1) the lawsuit with Shaker was not an "accident" and that (2) the damages alleged in that suit are not covered "property damage." [Doc. 29-8.]

On September 27, 2010, Valley Ford filed the current action and on December 7, 2010, filed an amended complaint. [Doc. 1; Doc. 16.] In this action, Valley Ford seeks a declaratory judgment, under 28 U.S.C. § 2201, that Phoenix owes it indemnification and defense in the underlying Shaker lawsuit. Valley Ford also makes a breach of contract and a bad faith claim against Phoenix for the denial of coverage. [Doc. 16.] The parties now file cross-motions for summary judgment. [Doc. 30; Doc. 32.] Defendant Phoenix says that it is entitled to judgment because (1) the damages that are alleged in the underlying lawsuit are not "property damages," as defined in the policy; (2) the lawsuit was not an "accident" triggering coverage under the policy; and (3) that the exclusions for expected or intended injury, contractual liability, and loss of use contained in the Garage Coverage Form preclude coverage. [Doc. 31 at 6.] Plaintiff Valley Ford, by contrast, says that it is entitled to judgment because (1) the harm alleged by Shaker in the underlying suit are "property damages"; (2) the actions alleged in the amended Shaker complaint constitute an "accident" triggering

-4-

Case No. 1:10-CV-02170
Gwin, J.

coverage; and (3) that none of the exclusions in the policy are applicable.[2/] [Doc. 32; Doc. 37.]

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.* at 586. Nor can the non-moving party rely upon mere allegations or denials of its pleadings. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted). Ultimately, the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Martingale,* 361 F.3d at 301.

## III. Analysis

*III.A Is the Conduct Alleged in Underlying Lawsuit an "Accident" Under the Policy?*

---

[2/] Counter to the Plaintiffs' contention, the Court has no recollection of delaying a ruling on the bad faith claim until further discovery is completed at the Case Management Conference. [Doc. 37.] Rather, the Court specifically stated that all of the claims will proceed together in ruling upon the Defendant's motion to bifurcate. [Doc. 26.] However, as Valley Ford has failed to prove that it is entitled to judgment, it is unnecessary to determine whether delaying a ruling on the bad faith claim is appropriate. The Court, therefore, **DENIES** the Plaintiff's motion for an continuation of ruling on th bad faith claim under Rule 56(f) as moot. [Doc. 37.]

-5-

Case No. 1:10-CV-02170
Gwin, J.

The Garage Operations portion of the policy at issue here provided coverage for "property damage" caused by an "accident" resulting from garage operations. [Doc. 29-1 at 22.] The policy defines "accident" as a "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage'" and "property damage" as "damage to or loss of use of tangible property." [Id. at 36-37.] If the underlying lawsuit against Valley Ford does not allege conduct that would constitute an "accident" within that terms meaning in the policy, then there is no occurrence triggering coverage and a duty to defend.

Under Ohio law, an "accident" in the insurance context is generally defined as "unintended and unexpected happenings." Owens-Illinois, Inc. v. Aetna Casualty & Surety, 990 F.2d 865, 872 (6th Cir. 1993) (citing Hybud Equip. Corp. v. Sphere Drake Ins. Co., 597 N.E.2d 1096, 1100 (Ohio 1992)). The parties both agree that this meaning of the term "accident" should apply to the Court's interpretation of the insurance contract. [Doc. 31 at 16; Doc. 32 at 11.]

As a preliminary matter, there is little issue – and the Plaintiff does not even seem to dispute – that Shaker's fraud, rescission, breach of contract, and unjust enrichment claims do not plead conduct that would constitute an "accident" under the terms of the policy. First, with regard to the claim of fraud, this claim would not be alleging "unintended and unexpected happenings," since it is an intentional tort. See Cleveland Freightliner, Inc. v. Federated Service Ins. Co., 2010 WL 395626, at *5 (N.D. Ohio, Jan. 26, 2010). Defendant Phoenix has no duty to defend or indemnify Valley Ford related to this claim. Second, with regard to the rescission, breach of contract, and unjust enrichment claims, the Court also finds that none of these claims fall within the definition of "accident." Ohio courts have regularly found that claims based on contract – of which all of these are – do not fall within the terms of insurance contracts with similar or identical definitions of

Case No. 1:10-CV-02170
Gwin, J.

"accident." See *Cleveland Freightliner, Inc.*, 2010 WL 395626, at *8 (finding that breach of contract claims are not "accidents"); *Auto Owners Mut. Ins. Co. v. Kendrick*, 2009 WL 1263967 (Ohio Ct. App., May 4, 2009); *Monarch Const. Co. v. Great Am. Ins. Co.*, 1997 WL 346097 at *3, (Ohio Ct. App., June 25, 1997) ("Breach-of-contract actions ordinarily do not involve "occurrences" as specified in commercial general liability policies."). See also *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 582 (6th Cir. 2001) (holding that a claim alleging breach of contract is not an "occurrence" under a similar policy and collecting cases).

The Plaintiff also contends that Shaker's negligent misrepresentation claim is an "accident" under the policy. [Doc. 32 at 11; Doc. 37 at 7.] Of the various causes of action in pleaded in the amended Shaker complaint, this is the only claim that even arguably falls within the relevant Garage Operations portion of the policy. In arguing that the negligent misrepresentation is an "accident," the Plaintiffs rely heavily upon *State Farm v. Helminiak*. 659 N.E.2d 385 (Ohio Comm. Pl. 1995). In that decision, the Lucas County Court of Common Pleas held that a vendor's allegedly negligent misrepresentation that a homeowners' association would allow for the construction of a bridge across a ditch was an "accident." 659 N.E.2d at 388-90. This common pleas court decision suggests that the claim for negligent misrepresentation pleaded here by Shaker should fall within the policy language. The Plaintiff's reliance on that decision, however, ignores much more recent, and more controlling, case law to the contrary.

In *Cincinnati Ins. Co. v. Anders*, the Supreme Court of Ohio considered whether a claim for negligent misrepresentation related to a failure to disclose the condition of a home that was sold was an "accident" under policy language that defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results

-7-

Case No. 1:10-CV-02170
Gwin, J.

. . . in 'Bodily Injury'; or 'Property damage.'" 789 N.E.2d 1094, 1098 (Ohio 2003). This definition is quite similar to the definition of "accident" in the insurance contract at issue. The Supreme Court of Ohio ultimately concluded that a claim for negligent misrepresentation was not an accident, and thus, was not an occurrence triggering coverage or a duty to defend under the policy. *Id.* at 1098-99.

A federal court sitting in diversity "must follow the controlling decisions of the Ohio Supreme Court" when applying Ohio state law. *Henry v. Wausau Bus. Ins. Co.*, 351 F.3d 710, 713 (6th Cir. 2003). Here, the Supreme Court of Ohio has weighed in on the issue of whether a claim of negligent misrepresentation is an "accident" under insurance policy language nearly identical to that at issue here. Thus, the Court will appropriately follow the on-point precedent of *Anders* and will conclude that Defendant Phoenix had no duty to indemnify or defend Valley Ford related to his cause of action. *See Westfield Ins. Companies v. D.C. Builders, Inc.*, 2004 WL 309272, at *1-5 (Ohio Ct. App., Feb. 19, 2004) (finding that reliance on *Helminiak* after *Anders* is inappropriate and holding that a claim for negligent misrepresentation is not accidental); *see also Cleveland Freightliner*, 2010 WL 395626, at *8-9 (finding that a negligent breach of warranty claim is not an accident under a similar insurance contract because the negligence claim was based on a breach of contract).

As there is no occurrence triggering coverage in the first instance, it is unnecessary for the Court to resolve whether the amended Shaker complaint alleges "property damage." However, even if any of the causes of action pleaded by Shaker did constitute an "accident," the Court notes that is doubtful that the damages alleged by Shaker would be "property damage" under the policy.[3]

---

[3] The Garage Operations policy covers "property damage" suffered during an accident. [Doc. 29-1 at 22.] The Policy defines "property damage" as "damage to or loss of use of tangible property." [Doc. 29-1 at 37.] The Defendant says that all of the damages alleged by Shaker are economic damages, which would not be "property damages"
(continued...)

-8-

Similarly, because insurance policy exclusion does not create coverage, it is unnecessary for the Court to determine whether any of the coverage exclusions offered by the Defendant apply.

### IV. Conclusion

Because none of the claims brought by Shaker in the underlying litigation alleges conduct that would constitute an "accident" triggering coverage, the Court finds that Defendant Phoenix has no additional duty to defend or indemnify Plaintiff Valley Ford. Accordingly, the Court **GRANTS** the Defendant's motion for judgment and **DENIES** the Plaintiff's motion for judgment.

IT IS SO ORDERED.

Dated: April 25, 2011               s/    *James S. Gwin*
                                    JAMES S. GWIN
                                    UNITED STATES DISTRICT JUDGE

---

<sup>3/</sup>(...continued)
under the policy. [Doc. 31 at 14; Doc. 35 at 4.] The Plaintiff says that the complaint alleges property damage because Shaker says that since the trucks do not have dump bodies that it has lost the ability to lease them, and has thus, lost use of them. [Doc. 32 at 10-11.] This is a close issue and the Court need not definitively resolve it. Nonetheless, the Court notes that the Defendant has the much stronger argument. Valley Ford says that Shaker cannot "use" the trucks because it now cannot lease them; however, this does not seem to be the type of "use" that this policy language envisions. In reality, Shaker is saying that since it cannot lease these trucks anymore, it has lost a valuable stream of income. This damage would not be "property damage" under the policy and instead is a form of economic damages. Indeed, Shaker did not ever possess the trucks. [Doc. 33-1 at ¶ 5.] It is quite hard to say that this damage is a loss of use and not merely a loss of stream of income.